

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

---

ALB

*United States Attorney's Office*
*610 Federal Plaza*
*Central Islip, New York 11722-4454*

September 23, 2013

<u>Filed Via ECF – Courtesy Copy Provided By Hand</u>

The Honorable Joseph F. Bianco
United States District Judge
Eastern District of New York
924 Federal Plaza
Central Islip, New York 11722

   Re: United States v. Leonard I. Stambler
     <u>Criminal Docket No. 11 CR 812 (S-1)(JFB)</u>

Dear Judge Bianco:

  The government respectfully submits this letter in connection with the trial in the above-captioned case, for which trial is scheduled.

  The government hereby moves <u>in</u> <u>limine</u> seeking: (1) to introduce evidence in its case-in-chief of an uncharged crime – marijuana possession – involving the defendant and co-conspirators as direct evidence of the conspiracy charged in the indictment, (2) to prohibit the defendant from introducing evidence of New York State's Internet System for Tracking Over-Prescribing – Prescription Monitoring Program ("I-STOP/PMP program") and (3) to preclude the defendant from eliciting any testimony about specific instances of conduct and to permit the government to cross-examine any such "character" witnesses as to their knowledge of specific instances of conduct, if the defendant introduces any character testimony.

**I. EVIDENCE OF DEFENDANT STAMBLER'S MARIJUANA TRANSACTION WITH CO-CONSPIRATOR CHRIS ADAMS IS ADMISSIBLE IN THE GOVERNMENT'S CASE-IN-CHIEF AS DIRECT EVIDENCE OF THE <u>CHARGED CONSPIRACY</u>**

  The government moves <u>in</u> <u>limine</u> to introduce evidence in its case-in-chief of a marijuana transaction between co-conspirator Chris Adams and Defendant Stambler as an uncharged bad act.

Specifically, co-conspirator Chris Adams will testify that in late 2010, he gave a small quantity of the marijuana – approximately 10 grams – to defendant Stambler.

As set forth below, this distribution of marijuana from the co-conspirator to defendant Stambler, a violation on the part of defendant Stambler,[1] is admissible as direct proof of the crimes charged without regard to Rule 404(b) of the Federal Rules of Evidence. See United States v. Williams, 453 Fed. Appx. 74, **5 (2d Cir. 2011)(defendant's involvement in possessing and distributing marijuana properly admitted this evidence to 'explain how [the] criminal relationship developed,' provide background information, and 'help the jury understand the basis for the co-conspirators' relationship of mutual trust.'"). Alternatively, this evidence is, however, also admissible under Rule 404(b) because it is being offered for purposes expressly permitted by that rule.

## A.   The Evidence of These Criminal Activities Is Admissible to Prove Elements of the Conspiracy

As the Second Circuit has stated regarding conspiracy charges:

> As we have previously stated, "[w]hen the indictment contains a conspiracy charge, uncharged acts may be admissible as direct evidence of the conspiracy itself." United States v. Thai, 29 F.3d 785, 812 (2d Cir. 1994).

United States v. Washington, 347 Fed. Appx. 704, 705-06 (2d Cir. 2009)(unpub.)(additional robberies not specifically charged in the indictment admissible as direct evidence of conspiracy).

Here, just as in Thai, "[i]t is clear the government may offer proof of acts not included within the indictment, as long as they are within the scope of the conspiracy." Id. at 812, citing United States v. Bagaric, 706 F.2d 42, 64 (2d Cir. 1983), abrogated on other grounds by Nat'l Org. for Women, Inc. v. Scheidler, 510 U.S. 249, 259-60 (1994).  In fact, "[a]n act that is alleged to have been done in furtherance of the alleged conspiracy . . . is not an 'other' act within the meaning of Rule 404(b); rather, it is

---

[1]   Under New York Penal Law section 221.05, possession of less than 25 grams of marijuana is a violation, rather than a crime and for a first offense carries only a fine of up to $100.

part of the very act charged."  See Thai, 29 F.3d at 812 (internal citations omitted).

Rule 403 allows for the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice."  Fed. R. Evid. 403 (emphasis added). Evidence is not "unfairly prejudicial" under Rule 403 simply because it supplements other evidence upon which a jury reasonably could convict and might not be absolutely essential to the government's case.  See United States v. Fortenberry, 971 F.2d 717, 722 (11th Cir. 1992) ("we decline to hold that the government must proffer only enough evidence to allow a jury to convict, but no more").  As another Circuit explained in United States v. McRae, 593 F.2d 700 (5th Cir. 1979):

> Relevant evidence is inherently prejudicial;
> but it is only unfair prejudice, substantially
> outweighing probative value, which permits
> exclusion of relevant matter under Rule 403.
> Unless trials are to be conducted on
> scenarios, on unreal facts tailored and
> sanitized for the occasion, the application of
> Rule 403 must be cautious and sparing.  Its
> major function is limited to excluding matter
> of scant or cumulative probative force,
> dragged in by the heels for the sake of its
> prejudicial effect.  As to such, Rule 403 is
> meant to relax the iron rule of relevance, to
> permit the trial judge to preserve the
> fairness of the proceedings by exclusion
> despite its relevance.  It is not designed to
> permit the court to "even out" the weight of
> the evidence, to mitigate a crime, or to make
> a contest where there is little or none.

Id. at 707.

Relevant evidence is not "unfairly prejudicial" simply because it presents the defendant in a bad light.  For instance, courts may admit evidence of a defendant's racist views or the racist doctrine of a racist group with which a defendant is affiliated when the evidence explains the context, motive, and set-up of the crime.  See United States v. Beasley, 72 F.3d 1518, 1527-28 (11th Cir.1996), and cert. denied, 519 U.S. 866 (1996). Nor is relevant evidence "unfairly prejudicial" simply because it reveals the harsh realities of criminal conduct or because it presents criminal conduct in vivid terms.  See United States v. Sanchez, 992 F.2d 1143, 1160 (11th Cir. 1993) (photographs of scene

of explosion, expert demonstration of operation of bomb, and references to risk that bomb could have exploded while aboard commercial airliner admitted as proof of offense of murder for hire, unlicenced transportation of explosives, and interstate transportation of explosives with intent to injure and to kill); United States v. Patterson, 819 F.2d 1495, 1504-05 (9th Cir. 1987) (evidence of shooting admitted as proof of offense of conspiracy to possess heroin with intent to distribute).

Here, the evidence of a marijuana distribution by a co-conspirator to defendant Stambler is inextricably intertwined with the evidence regarding the charged offense and necessary to complete the story of the crime [on] trial.  See United States v. Basciano, 2006 WL 385325 at *1 (E.D.N.Y. 2006)(citing United States v. Towne, 870 F.2d 880, 886 (2d Cir. 1989)).  Put simply, just as in United States v. Williams, 453 Fed. Appx. at **5, the marijuana transaction here, "'explain[s] how [the] criminal relationship developed,' provide[s] background information, and 'help[s] the jury understand the basis for the co-conspirators' relationship of mutual trust.'"  Id.  Moreover, such evidence pales in comparison to the charged acts involving a Schedule II controlled substance. As such, there is no danger of undue prejudice.

**B.    EVIDENCE OF SUCH AN UNCHARGED ACT WOULD ALSO BE ADMISSIBLE AGAINST THE DEFENDANT UNDER FEDERAL RULE OF EVIDENCE 404(b)**

Federal Rule of Evidence 404(b) provides in pertinent part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

See Fed. R. Evid. 404(b).  The Second Circuit directs trial courts to conduct a four-part inquiry into the admissibility of other acts evidence under Rule 404(b).  Courts must consider whether the act (1) is offered for a proper purpose, (2) relevant to a disputed trial issue, (3) the probative value is substantially outweighed by its possible prejudice, and (4) the judge must administer an appropriate limiting instruction if one is requested.  Basciano, 2006 WL 385325 at *3 (citing United States v. Edwards, 342 F.3d 168, 176 (2d Cir. 2003)).

The evidence of the defendant's other conduct with the co-conspirators is further admissible under Rule 404(b) to provide background information, motive and to enable the jury to understand the complete story of the crime charged. Numerous cases in this Circuit permit the introduction of evidence for this purpose. See, e.g., United States v. Skowronski, 968 F.2d 242, 246 (2d Cir. 1992) (collecting cases); United States v. Pitre, 960 F.2d 1112, 1119 (2d Cir. 1992); United States v. Brennan, 798 F.2d 581, 590 (2d Cir. 1986). Such background evidence has been specifically approved when introduced "to furnish an explanation of the understanding or intent with which acts were performed." Skowronski, 968 F.2d at 246.

In Brennan, for example, the defendant was a former Supreme Court Justice of New York State charged with fixing four criminal cases in Queens. 798 F.2d at 583. The government's central witness was Anthony Bruno, who served as a middleman between the state court defendants and then-Justice Brennan. Id. The contested evidence involved the alleged fixing by Brennan and Bruno of three criminal cases not charged in the indictment. Id. at 589. The Second Circuit affirmed the admission of this evidence, reasoning that it "helped explain to the jury how the illegal relationship between Brennan and Bruno developed . . . [and] was integral to an understanding of Bruno's and Brennan's involvement in [two of the cases charged in the indictment]." Id. at 590. "Without this evidence," the Court added, "the jury would have had a truncated and possibly confusing view . . . of the basis for the trust between Brennan and Bruno." Id.; see also United States v. Kalaydjian, 784 F.2d 53, 56 n.3 (2d Cir. 1986) (affirming admission of prior bad act evidence to establish trust relationship between defendant and informant); Harris, 733 F.2d at 1006-07 (same).

Consistent with Brennan, the Second Circuit has repeatedly held that evidence of how members of a conspiracy met, committed crimes together, and grew to trust each other over time is relevant to explain the relationships between members of the conspiracy. Accordingly, in United States v. Williams, 205 F.3d 23 (2d Cir. 2000), the Second Circuit upheld the admissibility of evidence relating to the defendant's prior criminal activities -- including marijuana distribution, credit card fraud and filing false charges of assault -- with two co-conspirators involved in the charged conspiracy to distribute cocaine.

In reaching this conclusion, the Second Circuit held that "evidence of [the defendant's] prior criminal conduct with his co-conspirators was relevant to 'inform the jury of the background of the conspiracy charged, to complete the story of the crimes

charged, and to help explain to the jury how the illegal relationship between the participants in the crime developed.'" Williams, 205 F.3d at 33-34 (quoting Pitre, 960 F.2d at 1119); see also Diaz, 176 F.3d at 79-80 (2d Cir. 1999); United States v. Rosa, 11 F.3d 315, 33-334 (2d Cir. 1993) (holding that codefendants' relationship over a 14-year period, during which stolen property and narcotics crimes were committed, "was properly admitted to explain how the illegal relationship between the two [defendants] developed and to explain why [one defendant] . . . appointed [the other defendant] . . . to a leading position in the Organization").

As set forth above, the other act evidence sought by the government here involves defendant Stambler's illicit contact with his co-conspirator and will inform the jury of the background of the conspiracy charged, complete the story of the crimes charged and explain to the jury how the illegal relationship between the co-conspirators developed. The government anticipates that defendant Stambler will claim that he had simply a doctor-patient relationship with Chris Adams, rather than a co-conspirator relationship. This evidence contradicts such a claim. The marijuana transaction between the co-conspirators provides background and context to their relationship and explains how they became comfortable with each other.

## II. THE DEFENDANT SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE CONCERNING THE I-STOP/PMP PROGRAM BECAUSE SUCH EVIDENCE WOULD BE IRRELEVANT AND LIKELY TO CONFUSE THE JURY

The government hereby moves in limine to preclude the defendant from improperly (1) offering at trial evidence of the New York State I-STOP/PMP Program, (2) cross-examining law enforcement personnel or expert witnesses concerning the I-STOP/PMP Program and (3) commenting in opening or closing statements concerning the I-STOP/PMP Program.

### A.   Background

During the time period of the Superseding Indictment, New York State maintained a Prescription Monitoring Program Registry which doctors could voluntarily check online for evidence that patients were seeing multiple doctors and/or using multiple pharmacies. Defendant Stambler was registered to use this program with the NYS Bureau of Narcotics Enforcement and did in fact access the registry on a number of occasions.

Following the time period of the Superseding Indictment, New York State passed and implemented the Internet System for

Tracking Over-Prescribing ("I-STOP") Act which, as of August 27, 2013 requires most prescribers to consult the PMP registry when writing prescriptions for Schedule II, III, and IV controlled substances.  Moreover, the system has been improved to provide real-time prescription tracking, supplying more information to doctors and pharmacists.

> **B.  Because the I-STOP System Was Not Implemented until after the Conduct at Issue Here, it is Not Relevant and Would Only Confuse the Jury**

To the extent that defendant Stambler may seek to introduce evidence of the improvements made to the PMP Registry via the I-STOP Program, such evidence would be completely irrelevant under Federal Rule of Evidence 401 to defendant Stambler's actions, knowledge or intent at the time of the conduct here.  Moreover, such evidence would create unfair prejudice, confusion on the part of the jury and waste of time under Federal Rule of Evidence 403.

## III. THE PERMISSIBLE SCOPE OF TESTIMONY ELICITED FROM THE DEFENDANT'S "CHARACTER WITNESSES" SHOULD BE LIMITED TO REPUTATION OR OPINION EVIDENCE

> **A.  Federal Rule of Evidence 404**

It is well-settled that the "admissibility of character evidence rests in the sound discretion of the trial judge," and a trial court's ruling will not be disturbed on appeal "absent an abuse of discretion." United States v. Paccione, 949 F.2d 1183, 1201 (2d Cir. 1991).  Generally, it is improper to prove how a person acted by use of character evidence.  See Fed. R. Evid. 404.  One important exception to this general prohibition allows a defendant in a criminal case to introduce evidence of his own pertinent character trait.  Rule 404(a) of the Federal Rules of Evidence provides, in relevant part:

> Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except: (1) Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same.

Fed. R. Evid. 404(a).

As the plain language of the rule provides, evidence of a defendant's character or a trait of character is not admissible

unless the particular trait is considered "pertinent."  For purposes of Rule 404, the term pertinent has been interpreted as being synonymous with relevant.  See, e.g., United States v. Angelini, 678 F.2d 380, 381 (1st Cir. 1982) ("pertinent is read as synonymous with relevant"); United States v. Hewitt, 634 F.2d 277, 279 (5th Cir. 1981) (same); United States v. Skaggs, 553 F.2d 1073, 1075-1076 (7th Cir. 1977) ("'Pertinent has been interpreted as being synonymous with 'relevant'").  To be relevant, it is necessary that evidence of character, good or bad, be confined to a particular trait of character "the existence of which would be involved in the commission or noncommission of the crime charged."  29 Am. Jur. 2d, Evidence § 368 (2007).  Therefore, the basic issue is whether the character trait in question would make any fact of consequence to the determination of the case more or less probable than it would be without evidence of the trait.  See id.

The character trait of "law-abidingness" has been recognized as being pertinent to almost any charge.  See Michelson v. United States, 335 U.S. 469 (1948).[2]  The additional trait of honesty or veracity could become relevant in this case, but only if defendant Stambler testifies on his own behalf and his credibility is attacked, see United States v. Jackson, 588 F.2d 1046 (5th Cir. 1979), or the truth of out-of-court statements made by the defendant is attacked.  See United States v. Lechoco, 542 F.2d 84 (D.C. Cir. 1976).  Although no proffer has been made by the defense to this point, given the trajectory of this litigation to date, it is likely that Stambler will attempt to elicit additional testimony, however, about other, non-pertinent topics.  Indeed numerous courts have held that when a defendant is charged with a general intent crime, such as Conway is here, evidence of the defendant's general good character is irrelevant.

For example, in Paccione, the Second Circuit upheld the district court's refusal to allow evidence that a defendant in a fraud case had a son with cerebral palsy who the defendant had devoted his life to caring for.  In so doing, the court found that evidence concerning whether or not the defendant cared for his child had no bearing on whether he committed the charged crimes.  Paccione, 949 F.2d at 1201.  See also United States v. Harris, 491 F.3d 440, 446-447 (D.C. Cir. 2007) (in a case in

---

[2]  It is important to note that the Second Circuit has found that "law-abidingness" does not mean general evidence of one's failure to commit crimes on other occasions, as this form of testimony lacks probative value.  See United States v. Scarpa, 897 F.2d 63, 70 (2d Cir. 1990).

which defendant was prosecuted for possession with intent to distribute crack cocaine, proffered character testimony regarding the defendant being a good father and family man was properly excluded as not being a trait "pertinent" to the drug charges); United States v. Neighbors, 23 F.3d 306 (10th Cir. 1994) (pharmacist indicted for illegally dispensing narcotics was not permitted to introduce character testimony regarding his service on the board of a substance abuse center, as it was not material to the charges); United States v. Santana-Camacho, 931 F.2d 966 (1st Cir. 1991) (testimony of defendant's daughter purportedly showing that defendant was a good "family man" was not admissible character evidence in as much as traits of character were not pertinent to the crime of smuggling illegal aliens); United States v. Camejo, 929 F.2d 610 (11th Cir. 1991) (evidence that portrayed defendant as a good person through the use of prior "good acts" was inadmissible character evidence in narcotics prosecution); Jackson, 588 F.2d at 1046 (since evidence of trait of truthfulness is not pertinent to the criminal charges of conspiracy to distribute heroin, introduction of such evidence is forbidden as circumstantial evidence of those crimes); United States v. Hollier, 314 F. Supp. 2d 250, 254 (S.D.N.Y. 2004) (evidence of defendant's general good character has nothing to do with crime of tax evasion).

Whether or not Stambler gave away oxycodone for free, made house calls to patients, or expressed compassion for those who were ill is simply not relevant to whether he routinely distributed controlled substances to other oxycodone users without any objectively legitimate medical purpose. Consequently, this Court should preclude the defense from introducing evidence that has no bearing on the elements of the offense, but rather would be designed to "cause the jury to be influenced by sympathies that have no bearing on the merits of the case." Paccione, 94 F.2d at 1201.

## B. Federal Rule of Evidence 405

While Federal Rule of Evidence 404 and interpretive case law restricts the permissible character traits which may be elicited testimony concerning in this case to "law-abidingness" and possibly "truthfulness," Federal Rule of Evidence 405 further restricts the manner in which that evidence may be presented to the jury. Rule 405 provides, in pertinent part:

> (a) Reputation or opinion: In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by

> testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.
>
> (b) Specific instances of conduct. In a case in which character or a trait of character of a person is an essential element of a charge, claim or defense, proof may also be made of specific instances of that person's conduct.

Fed. R. Evid. 405.

As Rule 405 makes clear, unless character is an essential element of the crimes charged, on direct examination only reputation and opinion evidence may be used to prove the defendant's character. See United States v. Chan, No. S1197CR, 2002 WL 109528, at *1 (S.D.N.Y. Jan. 25, 2002). Specific instances of conduct may not be admitted. See, e.g., United States v. Doyle, 130 F.3d 523, 542 (2d Cir. 1997); United States v. Benedetto, 571 F.2d 1246, 1249-1250 (2d Cir. 1978). Character is an essential element of the crime charged only in circumstances that are exceedingly rare – when there is a specific trait that must be proven as part of the crime. See Shakur v. United States, 32 F. Supp. 2d 651, 668 (S.D.N.Y. 1999) (citing the Advisory Committee Notes to the 1972 Proposed Rules).

In his treatise on evidence, Judge Weinstein cites as examples situations where "the chastity of the victim under a statute specifying her chastity as an element of the crime of seduction, or the competency of the driver in an action for negligently entrusting a motor vehicle to an incompetent driver." J. Weinstein, M. Berger & J. McLaughlin, 2 Weinstein's Federal Evidence, § 405.05[4] (2d ed.).

Stambler's "character" is not an element of either 21 U.S.C. §§ 846 or 841(a)(1) – the general intent narcotics statutes at issue here. See, e.g., United States v. Lecco, No. 10-5003, 2011 WL 2708416, at *2 (4th Cir. July 13, 2011) (excluding evidence of defendant's helpfulness, as it was not an essential element of the murder and drug trafficking charges against him); United States v. Wilson, 244 F.3d 1208, 1218 (10th Cir. 2011) ("There is no trait of character essential to convictions for drug crimes."); United States v. Polanco-Moreno, 50 F.3d 18 (9th Cir. 1995) (finding that character is not an essential element of drug possession and conspiracy crimes). See also United States v. Doyle, 130 F.3d 523, 542 (2d Cir. 1997) (holding that elements of knowledge or intent do not give rise to character issues to which Rule 405(b) applies). Thus, Stambler can

only offer direct testimony about his character for lawabidingness or truthfulness in this case by way of reputation or opinion testimony. Stated another way, Stambler can ask his witnesses whether they have formed an opinion as to whether the defendant is a law-abiding person, and what that ultimate opinion is. Stambler's witnesses may not then describe specific instances of his conduct for the jury. See, e.g., United States v. Nektalov, No. S203CR828PKL, 2004 WL 1637010, at *2 (S.D.N.Y. July 21, 2004).

Of course, once Stambler offers reputation or opinion evidence of character, the government is entitled to question the witness on cross-examination about specific instances of his past conduct. See Fed. R. Evid. 404(a); United States v. Russo, 110 F.3d 948, 952 (2d Cir. 1997). Such cross-examination is permitted to evaluate the character witness's credibility and knowledge of Stambler, not to prove his guilt. See United States v. Birney, 686 F.2d 102, 108 (2d Cir. 1982). Accordingly, the government may not ask the witness guilt-assuming hypotheticals, such as, "would your opinion change if you knew the defendant was guilty," or, "did you know the defendant is guilty of the crimes charged." Russo, 110 F.3d at 952; see United States v. Damblu, 134 F.3d 490, 494-95 (2d Cir. 1998); United States v. Oshatz, 912 F.2d 534, 539 (2d Cir. 1990). Indeed, the government will be entitled to inquire about Stambler's misconduct that did not lead to a conviction or even an arrest in the past. See id. Consequently, Stambler's decision to call any character witnesses at all will be a tactical one here.

Finally, the Second Circuit has recognized that a trial judge may limit the amount of character evidence admitted. United States v. Paccione, 949 F.2d 1183, 1201 (2d Cir. 1991). "The admissibility of character evidence rests in the sound discretion" of the Court. Id. "Once a defendant offers character testimony, the prosecution is afforded substantial latitude to rebut such

12

evidence." <u>United States v. Russo</u>, 110 F.3d 948, 952 (2d Cir. 1997).

**IV.   <u>CONCLUSION</u>**

      For the reasons set forth above, the government's motions <u>in</u> <u>limine</u> should be granted in their entirety.

      Respectfully submitted,

      LORETTA E. LYNCH
      United States Attorney

By: _____
      Allen L. Bode
      Assistant U.S. Attorney

cc:  Gary Schoer, esq. (via ECF and email)